IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| BENJAMIN J. MARCHANT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 3:09-cv-1218 |
| v. | ) Judge Nixon |
| | ) Magistrate Judge Bryant |
| DURWOOD MOORE, | ) |
| in his official capacity as the Judge | ) |
| of the Dickson County General Sessions | ) |
| Court and in his individual capacity, et al. | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Pending before the Court is Defendant Durwood Moore's ("Defendant") Motion to Dismiss ("Defendant's Motion") (Doc. No. 13) and accompanying Memorandum (Doc. No. 14). Plaintiff Benjamin J. Marchant ("Plaintiff") filed a Response in opposition (Doc. No. 19), and Defendant filed a Reply (Doc. No. 23). For the reasons stated herein, Defendant's Motion is **GRANTED**.

I. BACKGROUND

On January 2, 2009, Plaintiff was a spectator in the General Sessions Court for Dickson County, Tennessee, where Defendant is a General Sessions Judge.[1] Plaintiff did not have any business pending before the Defendant, but instead had provided transportation for a friend who

---

[1] All facts in this section are taken from Plaintiff's Complaint (Doc. No. 1), which the Court accepts as true for the purposes of this Order. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).

1

was charged that day in court. While sitting on the bench, Defendant ordered that Plaintiff be taken into custody by court officers and subjected to a drug screen urinalysis. Plaintiff was taken into custody by court officers and removed from the courtroom. Plaintiff eventually submitted to a urinalysis screening. The result of the drug screen was negative and Plaintiff was released from custody.

At the time Defendant ordered Plaintiff taken into custody, Plaintiff was not acting in contempt of court. Defendant did not articulate any probable cause for the detention or reasonable suspicion that Plaintiff was under the influence of drugs at the time he was taken into custody. Rather, Defendant acted under his own policy of ordering the detention and drug screening of individuals in his courtroom who he suspected to be under the influence of drugs or alcohol. Defendant admitted during a separate proceeding that he would routinely order individuals in his courtroom to be taken into custody and submitted to drug screens.[2]

Plaintiff initiated this action by Complaint filed on December 30, 2009. (Doc. No. 1.) Plaintiff asserts causes of action under 42 U.S.C. § 1983 and a variety of common law and Tennessee statutory claims, including false imprisonment and intentional infliction of emotional distress. This Court has jurisdiction over Plaintiff's § 1983 claim pursuant to 28 U.S.C. §§ 1331, 1343. Under 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Plaintiff's state law claims.

---

[2] Defendant was investigated by the Tennessee Court of the Judiciary regarding the January 2009 incident with Plaintiff. Defendant ultimately received a public censure by this body for his courtroom behavior. (Doc. No. 19-1.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) is a means of testing the sufficiency of the claim for relief, and as such it must be understood in conjunction with Rule 8(a), which sets out the federal standard for pleading. 5B *Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure* § 1356 (3d ed. 2004). Rule 8(a) establishes a system of notice pleading, required a plaintiff to plead only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff need not plead an abundance of specific facts as this stage; the purpose of a complaint is limited to providing the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is legally sufficient if "supported by showing any set of facts consistent with the allegations in the complaint," *Twombly*, 550 U.S. at 563, and a complaint may proceed although the facts included therein appear unlikely to be proven in the course of litigation. *Id.* at 556. The federal system relies upon "liberal judgment rules and summary judgment motions to define disputed facts and dispose of unmeritorious claims." *Swierkiewicz v. Soreman N. A.*, 534 U.S. 506, 512-13 (2002). Accordingly, dismissal under Rule 12(b)(6) is proper only when a plaintiff fails to plead facts that, if proved, would entitle the plaintiff to relief. *Twombly*, 550 U.S. at 563; *Erickson*, 551 U.S. at 93.

3

III. ANALYSIS

Defendant argues that Plaintiff's allegations, even if true, are barred by the doctrine of judicial immunity.

Under the doctrine of judicial immunity, judges, including General Sessions judges who preside over courts of limited jurisdiction, enjoy absolute immunity from nearly all civil suits for money damages. *See King v. Love*, 766 F.2d 962, 966 (6th Cir. 1985). This immunity extends to any civil suit for money damages, including claims under 42 U.S.C. § 1983. *See id.*; *see also Stump v. Sparkman*, 435 U.S. 349, 356 (1978). There are only two recognized exceptions to this broad judicial immunity. First, a judge is not immune when the contested action takes place in the "clear absence of all jurisdiction." *Stump*, 435 U.S. at 357 (citing *Bradley v. Fisher*, 80 U.S. 335, 351 (1872)). Second, a judge is not immune from liability for "non-judicial acts." *Stump*, 435 U.S. at 361.

It is undisputed that, as a General Sessions judge, and notwithstanding the enumerated exceptions, Defendant is generally protected by the doctrine of judicial immunity. Plaintiffs argue, however, that Defendant's behavior falls under one or both of the exceptions to the doctrine. (Doc. No. 19, at 2, 4.)

For the reasons set forth below, the Court finds that Defendant's actions do not fall under either one of the exceptions, and are therefore protected by judicial immunity from all of Plaintiff's claims.

### A. Defendant did not act in the clear absence of all jurisdiction.

The first exception to judicial immunity occurs when a judge acts without jurisdiction. *Stump*, 435 U.S. at 357; *see also Brookings v. Clunk*, 389 F.3d 614, 623 (6th Cir. 2004); *Depiero*

4

*v. City of Macedonia*, 180 F.3d 770, 785 (6th Cir. 1999). This exception considers the scope of a jurist's judicial authority, and withdraws immunity for actions that fall outside of the boundaries of a judge's power. "[T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump*, 435 U.S. at 356.

A judge must act in the "clear absence of all jurisdiction" in order to lose the protection of judicial immunity. *Bradley*, 80 U.S. at 351. In contrast, a judge who merely acts in "excess of [their] jurisdiction" will still be afforded the full protections of judicial immunity. *Id.* In *Stump*, the Supreme Court provided an illustrative example of the jurisdiction issue in judicial immunity:

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Stump*, 435 U.S. at 357 (citing *Bradley*, 80 U.S. at 352).

The jurisdiction exception concerns not only the power to hear particular cases (subject matter jurisdiction) but also the full scope of a judge's statutory authority. *See Johnson v. Turner*, 125 F.3d 324, 335 (6th Cir. 1997). This includes any authority vested in the judge by statute, *see id.*, as well as consideration of any statutory abrogation of judicial authority. *See Stump*, 435 U.S. at 358 ("[I]n our view, it is more significant that there was no . . . statute and no case law . . . prohibiting a circuit court . . . from considering a petition of the type presented"); *see also Mills v. Killebrew*, 765 F.2d 69, 71 (6th Cir. 1985) ("A judicial officer acts in the clear absence of jurisdiction only if he knows that he lacks jurisdiction, *or acts despite a clearly valid statute or case law expressly depriving him of jurisdiction.*") (emphasis added).

Tennessee statutes provide broad authority for control of the courtroom, which would include the ability to detain and remove spectators. *See* Tenn. Code Ann. § 16-1-102 (2010) ("Every court has the power to: (1) Enforce order in its immediate presence, or as near thereto as is necessary to prevent interruption, disturbance, or hindrance to its proceedings . . . ."). Broad authority over the courtroom is also supported by Sixth Circuit precedent. *See Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir. 1994) ("[A] judge may control the conduct of those who appear in the courtroom."). No statutory authority abrogating Defendant's power to detain courtroom spectators is advanced in Plaintiff's Response. (Doc. No. 19.)

Although the Sixth Circuit has not ruled directly on the issue of judicial immunity regarding actions taken toward a courtroom spectator (such as Plaintiff), other district courts in the Sixth Circuit have addressed the issue. In *Flanagan v. Shamo*, 111 F. Supp. 2d 892 (E.D. Mich. 2000), the defendant judge ordered the plaintiff, who had recently been excused as a witness in defendant's court, to remain in the courtroom for service of a Show Cause Order. Plaintiff, at this point merely a spectator in the courtroom, disobeyed the order to remain in the courtroom and was subsequently held in contempt and sentenced to ten days in jail. *Id.* at 895. In dismissing the plaintiff's complaint against the defendant judge, the court in *Flanagan* recognized that the judge may have committed procedural errors by ordering the plaintiff to remain in the court, rather than scheduling a separate show cause hearing. However, the judge's general authority over courtroom matters provided sufficient grounds to survive *Stump*'s jurisdictional prong. *Id.* at 899 ("[T]o order Flanagan to remain in the courtroom or to hold him in contempt for violating that order is akin to the 'judge of the criminal court who convicts a defendant of a nonexistent crime' discussed by the Court in *Stump*.") Here, as in *Flanagan*,

Case 3:09-cv-01218   Document 26   Filed 09/28/10   Page 6 of 10 PageID #: 170

Defendant had broad statutory to control the actions of those present in the courtroom. *See* Tenn. Code Ann. § 16-1-102.

Although Plaintiff argues that jurisdiction did not exist in the instant case because he never became disruptive or contemptuous, this does not indicate a clear absence of all jurisdiction. Importantly, Plaintiff appears to concede in his Response that the Defendant had the power to detain spectators, including for disruptive or other contemptuous behaviors. (Doc. No. 19.) Even if we assume that Defendant acted in excess of his authority by detaining Plaintiff without probable cause or reasonable suspicion, Defendant did not act in the clear absence of jurisdiction because the power to detain was within the scope of his authority. *See Mireles v. Waco*, 502 U.S. 9, 12-13 (1991) ("If judicial immunity means anything, it means that a judge 'will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority.'" (quoting *Stump*, 435 U.S. at 356)). The invocation of an authorized judicial power, even erroneously, is precisely what the doctrine of judicial immunity was designed to protect. *See Stump*, 435 U.S. at 349 ("A judge is absolutely immune from liability . . . even if his exercise of authority is flawed by the commission of grave procedural errors.").

### B. Defendant's alleged actions were judicial acts.

The second exception to judicial immunity occurs when the judge's behavior does not constitute a judicial act. In *Stump*, the court adopted a two-prong test for determining whether a behavior constituted a judicial act. *Stump*, 435 U.S. at 362; *see also Depiero*, 180 F.3d 770, 784 (6th Cir. 1999) (adopting the *Stump* test for analyzing a judicial act). First, a court should look to "the nature of the act itself," and especially whether the action is a function that is normally performed by a judge. *Stump*, 435 U.S. at 362. Second, a court should look to "the expectations

7

of the parties," including whether or not they were dealing with the judge in his judicial capacity. *Id.*

The first prong of the *Stump* judicial behavior test ensures that judicial immunity is granted only where a judge is exercising a judicial power, as opposed to other administrative or legislative functions of the judge's office. *See Forrester v. White*, 484 U.S. 219, 229 (1988) (judge acted as administrator when demoting and discharging a court employee); *Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719 (1980) (judge acted as legislator in promulgating a code of conduct for attorneys). This prong reinforces the critical notion that it is judicial behavior, and not merely a judge's behavior, that immunity is designed to protect. *Forrester*, 484 U.S. at 229. Here, Defendant was performing a normal function of a judge when he ordered Plaintiff, an observer in his courtroom, detained and screened for drugs. *See* Tenn. Code Ann. § 16-1-102.; *see also Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir. 1994) ("A judge acts in his judicial capacity when he exercises control over his courtroom.") Even if a judge exercises his power to control the courtroom erroneously or excessively, as Plaintiff alleges here, such behavior still falls well within the ambit of judicial immunity. *See Mireles*, 502 U.S. at 12 (holding that defendant judge's order to court officers to use "excessive force" to return plaintiff to the courtroom was an immune judicial act, even if such a directive was in excess of defendant's authority).

Plaintiff argues in his Response that the alleged actions were not judicial acts because judges do not normally detain courtroom spectators for no reason and subject them to drug testing. (Doc. No. 19.) However, this argument misconstrues the first prong of *Stump*. When examining whether the behavior is normally performed by a judge, a court must look at the general type of behavior that the judge was undertaking, rather than the specific actions a judge

8

took in any particular case. *See Mireles*, 502 U.S. at 12. Thus, the key inquiry here is not into the particulars of Defendant's behavior and whether or not it comported with the law; rather, the Court must consider whether the general nature and function of the act are acceptable. *Id.* As noted above, a sitting judge has substantial authority to control the behavior of those present in her courtroom. *See, e.g., Cameron*, 38 F.3d at 271. Therefore, because Defendant's behavior falls within a general category of behavior normally performed by a judge, the first prong of the *Stump* judicial behavior test is satisfied.

A court must also consider the expectations of the party interacting with the judge, including whether or not they expected to deal with the judge in her official capacity. *Stump*, 435 U.S. at 360. Where the first prong of *Stump* ensures that the behavior in question is within the scope of normal judicial behavior, the second prong ensures that the behavior occurs within a proper judicial context. Here, Plaintiff argues that he did not intend to deal with Defendant in a judicial manner. Indeed, Plaintiff alleges that he had no business before the court on the day in question but was merely in the courtroom as a spectator, providing support and transportation for a friend. (Doc. No. 19.) Yet even taking these allegations as true, Plaintiff fails to allege facts sufficient to overcome the second prong of *Stump*.

A courtroom spectator deals with the judge in his official capacity, even though he is not before the judge due to a case or controversy. A courtroom spectator should expect that they might be required to interact with the judge in her official capacity, from simple matters such as being asked to rise as a judge enters the court to more unusual circumstances such as being excluded from the courtroom for a variety of practical and propriety grounds. By his presence in Defendant's courtroom when court was in session, Plaintiff dealt with the judge in his official

9

Case 3:09-cv-01218 Document 26 Filed 09/28/10 Page 9 of 10 PageID #: 173

capacity, even if Plaintiff was merely a spectator and not a party to any pending action before the court.

For the foregoing reasons, the Court finds that Defendant, a general sessions judge, is protected from Plaintiff's claims by the doctrine of judicial immunity. Defendant's alleged actions were within his jurisdiction and were judicial acts, and therefore the actions do not fall within either of the established exceptions to judicial immunity. Although the Plaintiff suggests that such immunity could result in unfettered judicial misconduct in the courtroom, courts have long been cognizant of these risks and have nonetheless reaffirmed the broad protections of judicial immunity. *See McAlester v. Brown*, 469 F.2d 1280, 1283 (5th Cir. 1970) ("That judicial immunity is sometimes used as an offensive dagger rather than a defensive shield must not justify derogating its inviolability."). Although judicial immunity necessarily means that some erroneous, and perhaps even malicious, actions on the bench may be immune from civil suits for money damages, this cost is outweighed by the benefit of an independent judiciary free from the specter of excessive litigation. *Stump*, 435 U.S. at 363.

IV. CONCLUSION

Defendant's Motion is therefore **GRANTED** and Plaintiff's claims against Defendant Moore are hereby **DISMISSED** with prejudice.

It is so ORDERED.

Entered this 25th day of September, 2010.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

10